KENNETH A. FEINSWOG
Bar No. 129562
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 846-5800
Facsimile: (310) 310-846-5801
kfeinswog@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRON MAIDEN HOLDINGS LIMITED, | CIVIL CASE NO. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION** |
| v. | |
| 3D REALMS ENTERTAINMENT ApS, | |
| Defendant. | |

Plaintiff, Iron Maiden Holdings Limited, alleges as follows for its complaint:

### I. JURISDICTION

1.  This is an action for injunctive relief and damages arising under the United States Trademark Act of 1946, 15 U.S.C. § 1051 et seq., as amended, (e.g., 15 U.S.C. § 1114 et seq., 15 U.S.C. § 1125 et seq., and 15 U.S.C. § 1126 et seq.),

1

California statutory law and the common law relating to trademark and trade name infringement and unfair competition. Subject matter jurisdiction over this action is conferred upon this Court by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's California state law claims because those claims are substantially related to Plaintiff's federal Lanham Act claims.

3. This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this District, is doing business in this District, a substantial portion of the activity about which Plaintiff complains has taken place in this District and/or Defendant has distributed the video game that infringes upon Plaintiff's rights in and/or into this District.

## II. THE PARTIES

4. Plaintiff, Iron Maiden Holdings Limited ("Iron Maiden" or "Plaintiff") is a United Kingdom Company, having its principal place of business at Bridle House, 36 Bridle Lane, London W1F 9BZ, United Kingdom.

5. Defendant 3D Realms Entertainment ApS ("3D Realms") is a Danish Limited Liability Company, having its principal place of business at Ledvogtervej 190, Stoevring, Denmark.

6. Defendant conducts business in interstate commerce by distributing video games throughout the United States.

## III. NATURE OF THE ACTION

7. This is a civil action for trademark infringement, dilution, and unfair competition arising under Federal and California law and/or the common law. Iron Maiden brings this action against Defendant because Defendant is using Ion Maiden, a confusingly similar version of the Iron Maiden trademark without authorization and is attempting to take advantage of Iron Maiden's worldwide recognition to sell Defendant's products and services. Such use is a violation of Iron Maiden's rights and is likely to cause confusion among the public.

8. Iron Maiden seeks both injunctive and monetary relief as a result of Defendant's knowing, willful and continuing infringement of Iron Maiden's rights.

## IV. FACTUAL BACKGROUND
### A. Iron Maiden and Its Asserted Trademarks

9. Iron Maiden is a world famous band that formed in 1975. Iron Maiden was a pioneer of the British heavy metal movement and has become one of the most commercially and musically successful bands of all time having recorded more than fifteen studio albums along with live albums and numerous compilations and has sold over 90 million records. Iron Maiden has also released eighteen different video projects. Iron Maiden has staged over 2,000 concerts across 63 countries. In 2018 alone, Iron Maiden played to over 750,000 fans in Europe on the first leg of its current world tour. Iron Maiden will commence its United States tour on July 18, 2019 and will perform approximately 27 concerts in the United States.

10. Iron Maiden has received more than 400 accolades, awards and nominations, including Grammy Nominations for Best Metal Performance in 1994 and 2001 and the BRIT Award for Best British Live Act in 2009. VH1 has ranked Iron Maiden at Number 24 in its "100 Greatest Artists of Hard Rock" and MTV placed Iron Maiden fourth in its "Top 10 Greatest Heavy Metal Bands of All Time." Kerrang Magazine named Iron Maiden as the most important band of the last 25 years.

11. In 2002, Iron Maiden won the Ivor Novello Award for international achievement. The band was also inducted into the Hollywood Rock Walk in 2005. Iron Maiden has had eight albums certified as Gold and five albums certified as Platinum in the United States. Iron Maiden also has numerous Silver, Gold and Platinum album awards throughout the world. Iron Maiden received the Online Metal Award for Best Tour and Artist of the Year in 2003.

12. Iron Maiden continues to sell and license the sale of a huge variety of IRON MAIDEN merchandise. Said merchandise includes, but is not limited to, computer games, clothing, beer, mugs, posters, watches, jewelry, belt buckles, key rings, goblets, flags, banners, coasters, patches, decals, playing cards, magnets, shoelaces, glow sticks, drum sticks, wristbands, skateboards and candle holders. Said merchandise is sold at Iron Maiden concerts and at retail stores around the world and through Internet sites. More than six million dollars' worth of licensed Iron Maiden merchandise has been sold in just the last 12 months.

13. Iron Maiden began selling Iron Maiden computer games in 1999 and has provided computer games online since August 2015 in the United States.

14. Iron Maiden released its first video game named "Ed Hunter" in 1999 and has sold approximately 58,000 copies of that game. Iron Maiden also released video games named "Flight 666" in 2009 and "Final Frontier" in 2010. In 2015,

Iron Maiden released its "Legacy of the Beast" video game. There have been more than 700,000 downloads of that game in the United States. The people who download the game collected approximately 45,000,000 characters which exhibits that Iron Maiden video game players actively participate in those games because the amount of characters collected increases with the frequency of playing the game. Iron Maiden songs have also been featured in numerous other video games including "Grand Theft Auto: Vice City", "Guitar Hero for Xbox", "Guitar Hero Encore Rocks the 80s", "Rock Band 2", "Carmageddon II: Carpocalypse Now", "Tony Hawks Downhill Jam", "Delta Force 2"," SSX on Tour", "Guitar Hero II", "Guitar Hero III: Legends of Rock", "Grand Theft Auto IV", "Madden NFL 10", "Grand Theft Auto IV: Episodes from Liberty City", "Rock Band Blitz", "Rocksmith 2014", "Angry Birds Evolution"  and "Tony Hawk's Pro Skater 4".

15.   Through its continued and extensive use of the IRON MAIDEN trademark, the IRON MAIDEN trademark has become famous and Iron Maiden has acquired substantial and valuable trademark rights in the IRON MAIDEN trademark.

16.   Iron Maiden is also the owner of the IRON MAIDEN trademark shown below and has used it since at least 1980 as a trademark for posters, clothing, souvenir concert programs, stickers, beer, calendars, computer games, photographs and decals."



17.   The IRON MAIDEN trademark shown below was duly and lawfully registered for "inclusion on paper or cardboard products – namely, posters, souvenir concert programs, stickers, calendars, photographs and decals" on the

Principal Register of the United States Patent and Trademark Office on November 27, 1984 as U.S. Reg. No. 1,306,972 ("the '972 Registration").



18. The IRON MAIDEN trademark shown below was duly and lawfully registered for "Clothing-Namely, T-Shirts, Jerseys, Sweat-Shirts, Hats, Jackets and Leather Wrist Bands" on the Principal Register of the United States Patent and Trademark Office on November 27, 1984 as U.S. Reg. No. 1,307,146 ("the '146 Registration").

19. The IRON MAIDEN trademark shown below was duly and lawfully registered for "Entertainment Services-Namely, Live Musical Entertainment Performances Rendered by a Vocal and Instrumental Group" on the Principal Register of the United States Patent and Trademark Office on December 4, 1984 as U.S. Reg. No. 1,308,370 ("the '370 Registration"). Copies of those registrations are attached hereto as Exhibit A.

20. The IRON MAIDEN trademark symbolizes business goodwill of Iron Maiden and is an intangible asset of substantial commercial value.

21. The IRON MAIDEN trademark distinguishes Iron Maiden as the source of its products and services, is inherently distinctive, and has further become distinctive through the acquisition of secondary meaning.

22. The IRON MAIDEN trademark is a famous mark and represents property of great value and goodwill to Iron Maiden.

23. Iron Maiden has extensively advertised and promoted the IRON MAIDEN trademark in the United States and throughout the world for almost forty years through all available media, including, but not limited to, national print publications, broadcast and cable television media, retail merchants, and via the Internet.

24. By virtue of its extensive sales and promotion, the IRON MAIDEN trademark has become famous in the trade and to the public.

## B. Defendant's Activities

25. Defendant is selling a video game called Ion Maiden. A picture relating to Defendant's video is attached hereto as Exhibit B. Defendant's Ion Maiden name is nearly identical to the IRON MAIDEN trademark in appearance, sound and overall commercial impression. Defendant also uses the Ion Maiden name to sell merchandise including shirts and mouse pads. (Exhibit C).

26. Decades after Iron Maiden first used the Iron Maiden trademark, Defendant began using the Ion Maiden name, without authorization, in an effort to confuse consumers into believing Defendant's products and services are somehow affiliated with or approved by Iron Maiden.

27. Defendant's misappropriation and use of a virtually identical imitation of the IRON MAIDEN trademark creates a likelihood of confusion among consumers. Customers who view Defendant's video game and merchandise are likely to believe that Iron Maiden is somehow affiliated with Defendant. The results of searches for Ion Maiden merchandise, t-shirts, posters and mouse pads relate to Iron Maiden. (Exhibit D).

7

28. Without even examining the content of the Ion Maiden video game, confusion is undeniable because of the virtually identical use of the iconic Iron Maiden mark for video games, a product that Iron Maiden has been selling for nearly 20 years, and shirts, a product that Iron Maiden has been selling for nearly 40 years. Standing alone, those facts establish likelihood of confusion but there is even more evidence of likelihood of confusion. That evidence includes the fact that Defendant has exhibited its intent to trade off on the Iron Maiden mark by adopting Shelly Harrison as the name of its main character which is an attempt to copy the name of Steve Harris, an Iron Maiden founder and primary songwriter; adopting a similar steel cut font for its Ion Maiden name knowing that Iron Maiden also uses a steel cut font for its iconic Iron Maiden mark; creating a video game that has the same look and feel as the Iron Maiden video game, "Legacy of the Beast"; and choosing to use its Ion Maiden Yellow Bomb emoji in its Ion Maiden video game and merchandise (Exhibits B and C) which is graphically similar to Iron Maiden's Eddie character who appears in all of Iron Maiden's video games and virtually all of Iron Maiden's compact disc covers, t-shirts and other merchandise.

29. There have been numerous instances of actual confusion with Iron Maiden fans believing that Defendants' Ion Maiden products are related to Iron Maiden. Actual confusion has occurred in online articles and comments about the Ion Maiden video game including Iron Maiden fans: commenting that they were misled into believing that the Ion Maiden game was an Iron Maiden game; clicking on an Ion Maiden online thread thinking that the thread was related to Iron Maiden; reading an article about the Ion Maiden video game waiting for an explained connection to Iron Maiden; wondering the whole time, while reading an article about the Ion Maiden video game, how they (Defendant) got the license to

use the Ion Maiden name (from Iron Maiden); expressing genuine excitement for an Iron Maiden video game; and commenting that "all that's missing is an … Iron Maiden soundtrack" and that the Iron Maiden song "Can I Play with Madness" would fit right in.

30. In addition, a review of the Ion Maiden game stated that the Ion Maiden name references "Brit Rocker" Iron Maiden.

31. Defendant's infringement is incredibly blatant. Defendant is undoubtedly aware of Iron Maiden's existence and is attempting to trade off on Iron Maiden's notoriety because, *inter alia*, Defendant chose to use the virtually exact Iron Maiden trademark and was instructed to cease and desist by Plaintiff. In response thereto, Defendant abandoned its Ion Maiden trademark application but chose to defiantly continue to use its Ion Maiden mark.

32. Defendant's use of a mark that is a virtual imitation of the IRON MAIDEN trademark is clearly intentional and calculated to deceive consumers. Such use constitutes unfair competition, and is intentionally fraudulent, malicious, willful and wanton. This likelihood of confusion results in significant damages to Iron Maiden as a result of the loss of its sales and/or licensing revenue and adverse consumer perception.

33. Defendant has no consent, license, approval or other authorization to use the IRON MAIDEN or any mark confusingly similar thereto in connection with its products or services. Defendant's video games, t-shirts, mouse pads and posters are the same type of products that Iron Maiden sells. Defendant's goods and services are also offered and sold to the same classes of customers and through the same channels of trade as Iron Maiden's video games, t-shirts, mouse pads, posters and other products.

34. The IRON MAIDEN trademark is of sufficient fame that, Defendant's use of the Ion Maiden name would result in prospective and actual purchasers of Defendant's goods and services to presume a connection with IRON MAIDEN.

### C. <u>Injury to Iron Maiden and the Public</u>

35. Defendant's use of a mark that is virtually identical to the IRON MAIDEN trademark is likely to falsely suggest a sponsorship, connection, license, or association of Defendant's goods and services with Iron Maiden and/or Iron Maiden's goods and services, thereby injuring Iron Maiden and the public.

36. Defendant's activities have immediately and irreparably harmed and, if not enjoined, will continue to so harm Iron Maiden and its long-used and federally registered IRON MAIDEN trademarks.

37. Iron Maiden has no adequate remedy at law.

### - COUNT ONE - <br> FEDERAL TRADEMARK INFRINGEMENT <br> <u>UNDER 15 U.S.C. § 1114</u>

38. Iron Maiden repeats and realleges each and every allegation set forth in Paragraphs 1 to 37 of this Complaint as if fully set forth herein, and incorporates them herein by reference.

39. Despite Iron Maiden's world renown prior rights in the IRON MAIDEN trademark set forth in the Registrations attached as Exhibit A, Defendant has, without the consent of Iron Maiden, used and continues to use in commerce the Iron Maiden name which is a virtually exact imitation of the IRON

MAIDEN trademark, in connection with the sale, offering for sale, distribution, and advertising of Defendant's products and/or services.

40. Defendant's actions constitute willful infringement of Iron Maiden's exclusive rights in the IRON MAIDEN trademark in violation of 15 U.S.C. § 1114.

41. Defendant's use of a virtually exact copy of the IRON MAIDEN trademark has been and continues to be done with the intent to cause confusion, mistake and to deceive customers concerning the source and/or sponsorship of Defendant's products.

42. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered irreparable harm to the valuable IRON MAIDEN trademark, and its reputation in the industry. Unless Defendant is restrained from further infringement of the IRON MAIDEN trademark, Iron Maiden will continue to be irreparably harmed.

43. Iron Maiden has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

44. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered damages to the valuable IRON MAIDEN trademark, and other damages in an amount to be proved at trial.

## - COUNT TWO -
## FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP, FALSE ADVERTISING AND TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

45. Iron Maiden repeats and realleges each and every allegation set forth in Paragraphs 1 to 37 and 39 to 44 of this Complaint as if fully set forth herein, and incorporates them herein by reference.

46. Defendant has knowingly used and continues to use in commerce its Ion Maiden name, that is confusingly similar and/or a virtually exact duplicate of the IRON MAIDEN trademark in connection with products that Defendant manufactures, advertises, promotes and sells and services that it renders. Defendant has used a virtually exact duplicate of the IRON MAIDEN trademark knowing that its name will cause confusion with Iron Maiden's products and services.

47. Defendant's use of the Iron Maiden name, to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant's products and services, is likely to cause consumers to believe in error that Defendant's products have been authorized, sponsored, approved, endorsed, or licensed by Iron Maiden or that Defendant is in some way affiliated with Iron Maiden or with the IRON MAIDEN trademark.

48. Defendant's acts constitute false and misleading descriptions, false advertising, and false designations of the origin and/or sponsorship of Defendant's goods and services, and constitute trademark infringement in violation of 15 U.S.C. § 1125(a).

49. By reason of Defendant's actions, Iron Maiden has suffered irreparable harm to the valuable IRON MAIDEN trademark. Unless Defendant is restrained from its actions, Iron Maiden will continue to be irreparably harmed.

50. Iron Maiden has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if Defendant's acts are allowed to continue.

51. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered damages to the valuable IRON MAIDEN trademark, and other damages in an amount to be proved at trial.

## - COUNT THREE –
## TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

52. Iron Maiden repeats and realleges each and every allegation set forth in Paragraphs 1 to 37, 39 to 44 and 46 to 51 of this Complaint as if fully set forth herein, and incorporates them herein by reference.

53. By virtue of Iron Maiden's long and continuous use of the IRON MAIDEN trademark in interstate commerce, its mark has become and continues to be famous within the meaning of 15 U.S.C. § 1125(c). As such, this mark is eligible for protection against dilution pursuant to 15 U.S.C. § 1125(c).

54. Defendant's use of a virtually exact copy of the IRON MAIDEN trademark in connection with advertising, promotion and sale of its computer game and merchandise, as described hereinabove, has threatened to cause, and has caused, dilution of the distinctive quality of Iron Maiden's famous IRON MAIDEN trademark by lessening its capacity to identify Iron Maiden's goods in violation of 15 U.S.C. § 1125(c).

55. Iron Maiden has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

56. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered damages to the valuable IRON MAIDEN trademark, and other damages in an amount to be proved at trial.

### - COUNT FOUR - COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

57. Iron Maiden repeats and realleges each and every allegation set forth in Paragraphs 1 to 37, 39 to 44, 46 to 51 and 53 to 56 of this Complaint as if fully set forth herein, and incorporates them herein by reference.

58. Defendant has violated Iron Maiden's exclusive common law rights in the IRON MAIDEN trademark.

59. Iron Maiden has continuously used its IRON MAIDEN trademark to identify its goods in California and elsewhere and to distinguish its goods from goods of a different origin. As such, Iron Maiden has common law rights to the IRON MAIDEN trademark.

60. Defendant's acts described above constitute trade mark infringement and trade name infringement under the common laws of the United States, including California.

61. Iron Maiden has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

62. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered damages to the valuable IRON MAIDEN trademark, and other damages in an amount to be proved at trial.

### - COUNT FIVE -
### UNFAIR COMPETITION
### CAL. BUS. & PROF. CODE §17200 ET SEQ.

63. Iron Maiden repeats and realleges each and every allegation set forth in Paragraphs 1 to 37, 39 to 44, 46 to 51, 53 to 56 and 58 to 62 of this Complaint as if fully set forth herein, and incorporates them herein by reference.

64. Defendant's acts, as alleged herein, have impaired Iron Maiden's goodwill, have created a likelihood of confusion, and have otherwise adversely affected Iron Maiden's business and reputation. These acts constitute unfair competition in violation of California Business and Professions Code §§17200 et seq. and California common law.

65. Iron Maiden has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

66. As a direct and proximate result of Defendant's conduct, Iron Maiden has suffered damages to the valuable IRON MAIDEN trademark, and other damages in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, Iron Maiden demands entry of a judgment granting relief against Defendants as follows:

A.  A ruling that Defendant has violated 15 U.S.C. § 1114(a), that Iron Maiden has been damaged by such violations, and that the Defendant is liable to Iron Maiden for such violations;

B.  A ruling that Defendant has violated 15 U.S.C. § 1125(a), that Iron Maiden has been damaged by such violations, and that the Defendant is liable to Iron Maiden for such violations;

C.  A ruling that Defendant has violated 15 U.S.C. § 1125(c), that Iron Maiden has been damaged by such violations and that Defendant is liable to Iron Maiden for such violations;

D.  A ruling that Defendant has committed common law trademark infringement and unfair competition, that Iron Maiden has been damaged by such infringement, and Defendant is liable to Iron Maiden for common law trademark infringement;

E.  A ruling that Defendant has violated Cal. Bus. & Prof. Code §17200 et seq.;

F.  An Order requiring Defendant to pay Iron Maiden compensatory damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117, and other applicable laws;

G.  An Order requiring Defendant to pay Iron Maiden statutory damages of $2,000,000.00 in accordance with 15 U.S.C. § 1117(c);

H.  An Order requiring Defendant to either cancel registration of the domain name ionmaiden.com or transfer the ownership of that registration to Iron Maiden;

I.  A ruling that Defendant has no right or authority to issue, grant, register, license, or otherwise authorize use of and/or use, copy, reproduce, or

display the IRON MAIDEN trademark or confusingly similar marks, including, but not limited to, the Ion Maiden name, in connection with selling, advertising, or promoting Defendant's products without Iron Maiden's consent;

  J. A ruling that Defendant's violation of Iron Maiden's rights has been willful;

  K. A ruling that this case is "exceptional," in the sense of 15 U.S.C. § 1117(a);

  L. Under all claims for relief, that the Court issue temporary, preliminary, and permanent injunctions and/or restraining orders enjoining Defendant, its employees, agents, successors and assigns, and all those in active concert and/or in participation with it, and each of them who receives notice directly or otherwise of such injunctions, from:

    (1) imitating, copying, or making any unauthorized use of the IRON MAIDEN trademark, including, without limitation to, making any unauthorized use of the Ion Maiden name;

    (2) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any services or products using the IRON MAIDEN trademark or any other simulation, reproduction, counterfeit, copy, or colorable imitation of the IRON MAIDEN trademark, including, without limitation to, the Ion Maiden name;

    (3) using the Iron Maiden name or any other any simulation, reproduction, counterfeit, copy or colorable imitation of the IRON MAIDEN trademark, including, without limitation to, the Ion Maiden name, in connection with the promotion, advertisement, display, sale, offer for sale, manufacture,

            production, circulation or distribution of any product or service;

    (4)    using any false designation of origin or false description including, without limitation, any letters, symbols, or designs constituting the IRON MAIDEN trademark or performing any act which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with Iron Maiden, or the IRON MAIDEN trademark, or is sold, manufactured, licensed, sponsored, approved or authorized by Iron Maiden;

    M.    An Order that Defendant immediately expressly abandon all pending trademark application(s) or registration(s) of the Ion Maiden mark or name;

    N.    For an Order directing that Defendant deliver for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using the Ion Maiden name or any other simulation, reproduction, counterfeit, copy or colorable imitation of the IRON MAIDEN trademark, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

    O.    An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendant is authorized by Iron Maiden or is related in any way to Iron Maiden's products and/or services;

    P.    An Order directing Defendant and its agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon Iron Maiden's counsel within

thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which it has complied with such judgment;

      Q.    An Order permitting Iron Maiden, and/or auditors of Iron Maiden, to audit and inspect the books, records, and premises of Defendant and related corporations for a period of six (6) months after entry of final relief in this matter, to determine the scope of Defendant's past use of Iron Maiden's intellectual property, including all manufacturing, distribution, and sales of products bearing the Ion Maiden name, as well as Defendant's compliance with the orders of this Court;

      R.    An award of Iron Maiden's costs and disbursements incurred in this action, including Iron Maiden's reasonable attorneys' fees;

      S.    An Order requiring Defendant to file with the Court and provide to Iron Maiden's attorney an accounting of all sales and profits realized by Defendant through the use of the Ion Maiden name;

      T.    An award of interest, including pre-judgment interest on the foregoing sums; and

      U.    For such other and further relief as the Court may deem just and proper.

# JURY DEMAND

Plaintiff Iron Maiden demands trial by jury for all issues so triable.

Dated:  May 28, 2019

Respectfully submitted,

s/Kenneth A. Feinswog
Kenneth A. Feinswog, Esq.
Attorney for Plaintiff
400 Corporate Pointe, Suite 300
Culver City, CA  90230
Telephone:  310-846-5800
Facsimile:   310-846-5801
kfeinswog@gmail.com